**O.G., P.G., and M.G., Relators,**

**v.**

**The Honorable Robert BAUM, Judge of the 314th District Court of Harris County, Texas, Respondent.**

No. 01–90–00370–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 24, 1990.

McNab W. Miller, III, Bellaire, for relators.

Connie W. Howell, Houston, for respondent.

Before EVANS, C.J., and DUGGAN and DUNN, JJ.

## OPINION

DUGGAN, Justice.

Relators seek relief from the respondent's order appointing the real party in interest, Harris County Child Protective Services ("CPS"), as temporary managing conservator of the minor relator, a 16–year–old male Jehovah's Witness, which includes the authority to consent to a blood transfusion for the minor. The other relators are the minor's parents.

The record reflects that the minor was struck by a train and severely injured. He will undergo surgery in an attempt to save his right arm. In the trial court, the minor's doctor provided a sworn statement that says

> Child needs surgery—If pt undergoes attempt to save right arm, he will definitely need transfusion—If, on the other hand, pt undergoes amputation of right upper extremity he may or may not need transfusion"

Blood transfusions are prohibited by relators' religious beliefs.

The minor signed a form in which he refused to consent to a transfusion and released his physician and the hospital "from all liability or responsibility to me for following my request." CPS filed suit under Tex.Fam.Code Ann. § 11.03(a)(5) & (6) (Vernon Supp.1990) and under chapter 17 of the Family Code seeking its appointment as temporary managing conservator of the minor. The sole ground that CPS alleged was the parents' refusal to allow physicians to administer a transfusion during the minor's upcoming surgery, if necessary. The respondent conducted a hearing and heard the testimony of CPS' caseworker and the minor's father, who stated that the minor understood that the minor's refusal of a transfusion could be fatal. The respondent then entered an order appointing CPS as temporary managing conservator and setting a show cause hearing for May 7, 1990.

■ Relators first contend that the respondent's order is void. An order is void when a court has no power or jurisdiction to enter it. *Urbish v. 127th Jud. Dist. Ct.,* 708 S.W.2d 429, 431 (Tex.1986). The provisions of Tex.Fam.Code Ann. §§ 17.04(c), 11.-11(a)(1) (Vernon 1986) expressly authorized the respondent to enter an order for the temporary conservatorship of the minor for the minor's safety and welfare. Relators' first contention is without merit.

■ Relators next contend that the trial court abused its discretion in entering the order. A writ of mandamus issues to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985); *Marshall v. Harris,* 764 S.W.2d 34, 35 (Tex.App.—Houston [1st Dist.] 1989, orig. proceeding). Temporary orders issued under § 11.11 are not subject to interlocutory appeal. Tex. Fam.Code Ann. § 11.11(g) (Vernon 1986). A trial court clearly abuses its discretion when it acts without reference to any guiding rules and principles, i.e., when its act was arbitrary or unreasonable, *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985); *Lamar Builders, Inc. v. Guardian Sav. & Loan Assoc.,* 789 S.W.2d 373, 373–374 (Tex.App.—Houston [1st Dist.], April 26, 1990, n.w.h.), or when the facts and law permit the trial court to make one decision, and the trial court rules to the contrary. *Johnson,* 700 S.W.2d at 917; *Lamar Builders,* at 374.

Relators claim that the respondent clearly abused his discretion because the order appointing CPS as the minor's temporary managing conservator deprives relators of their authority to refuse a blood transfusion for the minor. This deprivation, they contend, constitutes an impairment of their right to freely exercise their religion and their right to privacy in contravention of the United States and Texas Constitutions and the Texas common law.

### The Parents' Rights

■ The parents' first and fourteenth amendment guarantee of religious freedom does not include the liberty to expose their child to ill health or death. In *Prince v. Massachusetts,* 321 U.S. 158, 166–67, 64

S.Ct. 438, 442–43, 88 L.Ed. 645 (1944), the custodian of a nine-year-old girl was convicted of violating a state child labor law. The custodian had encouraged the child to sell Bible tracts on the public streets. The custodian challenged the constitutionality of the statutes and argued that the child was exercising the child's right to "preach the gospel" under the first and fourteenth amendments. *Id.* at 164, 64 S.Ct. at 441. The custodian further asserted that the statute violated the custodian's "parental rights" in violation of the due process clause of the fourteenth amendment. *Id.* In affirming the custodian's conviction, the court noted that

> the family itself is not beyond regulation in the public interest, as against a claim of religious liberty. And neither rights of religion nor rights of parenthood are beyond limitation.... *The right to practice religion freely does not include liberty to expose ... the child ... to ill health or death.*

321 U.S. at 166–67, 64 S.Ct. at 442–43 (emphasis added) (citations omitted).

■ Subsequently, other federal courts addressed the issue of whether parents have constitutional rights to refuse blood transfusions for their minor children when a court appoints a guardian with the authority to consent to a transfusion over the parents' objections. In *Jehovah's Witnesses v. King County Hospital*, 278 F.Supp. 488 (W.D.Wash.1967), *aff'd*, 390 U.S. 598, 88 S.Ct. 1260, 20 L.Ed.2d 158 (1968) a special three-judge district court confronted the issue of the constitutionality of a state statute under which the trial court had entered an order that declared the child in question a ward of the court and authorized the attending physician to administer blood transfusions. The parents contended that the statutes, as applied, facilitated 1) state impairment of their religious freedom, contrary to the first and fourteenth amendments, and 2) state impairment of their parental rights as guaranteed by the due process clause of the fourteenth amendment. *Id.* at 504. Relying on the reasoning in *Prince,* the court held that the statutes were not unconstitutional as applied. *Id.* at 505. In a one-sentence per curiam opinion, the United States Supreme Court affirmed, citing *Prince*, 390 U.S. at 598, 88 S.Ct. 1260. In *Staelens v. Yake*, 432 F.Supp. 834, 839 (N.D.Ill.1977), the trial court dismissed the parents' complaint alleging violation of their civil rights arising from an order appointing, over the parents' religious objections, a guardian to consent to the administration of blood transfusions for their minor son. The court held that the complaint failed to state a cause of action for the deprivation of the parents' constitutional rights under 42 U.S.C. § 1983. Thus, federal authority has refused to recognize parental constitutional rights to refuse blood transfusions for their minor children when a court appoints a guardian with the authority to consent to a transfusion over the parents' objections.

Relators cite no authority holding to the contrary. Thus, relators' have shown no infringement of the parents' right to freely exercise their religion in violation of the first and fourteenth amendments to the United States Constitution.

Likewise, relators cite no authority showing an infringement of the parents' right to privacy under the United States and Texas Constitutions, or an infringement of their right to the free exercise of religion in violation of the Texas Constitution and common law. Clearly, federal and Texas law is not settled in relators' favor on these issues; therefore, the respondent did not clearly abuse his discretion in appointing CPS as temporary managing conservator of the minor. *Abor v. Black*, 695 S.W.2d 564, 567 (Tex.1985).

### The Minor's Rights

■ The minor relies upon *In re E.G.*, 133 Ill.2d 98, 139 Ill.Dec. 810, 549 N.E.2d 322 (1989) to establish his constitutional and common-law rights to refuse a blood transfusion. In that case, the trial court appointed a temporary guardian to consent to a blood transfusion over the religious objections of E.G., a 17–year–old female, and her mother. The court of appeals reversed the trial court's order and held that E.G. was a "mature minor" and could refuse blood transfusions through the exer-

cise of her first amendment right to freely exercise her religion. The Illinois Supreme Court held that a "mature minor" may refuse medical treatment.

We note, however, that several distinctions reduce the persuasive authority of the Illinois Supreme Court's opinion.

First, the court held that a "mature minor" has a right under the *Illinois common law* to refuse medical care and, unlike the court of appeals, refused to address the first amendment issue. *In re E.G.*, 139 Ill.Dec. at 816, 549 N.E.2d at 328. The opinion does not address federal constitutional law or Texas constitutional and common law. Nor has Texas adopted the "mature minor" standard.

Second, the evidence developed in the Illinois trial court differs greatly from that developed in the instant case. At the hearings, E.G.'s doctor testified that E.G. was competent to understand the consequences of accepting or rejecting treatment, and that he was impressed with her maturity and the sincerity of her beliefs. *In re E.G.*, 139 Ill.Dec. at 811, 549 N.E.2d at 323. The associate general counsel for the University of Chicago Hospital corroborated E.G.'s doctor's testimony. *Id.* Further, a psychiatrist testified that E.G. had the maturity level of an 18 to 21–year–old and that she had the competence to make an informed decision to refuse blood transfusions, even if this choice was fatal. *Id.* 139 Ill.Dec. at 812, 549 N.E.2d at 324. In the instant case, the only similar testimony was the father's testimony that the minor understood that the refusal of a transfusion could be fatal.

Third, E.G. testified before the Illinois trial court, thereby demonstrating her competence to understand the consequences of her refusal. In the instant case, the minor's testimony was not presented to the trial court.

Because 1) the court did not apply federal constitutional law or Texas constitutional or common law, 2) the record before the Illinois court contained testimony establishing the minor's competency, and 3) the minor testified in court, we do not find the Illinois Supreme Court's opinion persuasive.

Relators cite no federal or Texas cases holding that a 16–year–old minor has a right, under the United States Constitution or the Texas Constitution and common law, to refuse a blood transfusion, and we have found none. However, we do not reach these issues.

Instead, we hold that the law is not settled in relators' favor concerning whether a 16–year–old has constitutional and common-law rights to refuse a blood transfusion. Because state and federal law is unsettled on these issues, and there was evidence that the minor would not be given blood transfusions unless they were necessary, relators have shown no abuse of discretion in the respondent's appointment of CPS as temporary managing conservator of the minor. *Abor*, 695 S.W.2d at 567.

We overrule the motion for leave to file the petition for writ of mandamus.