**Tammy Hartman POWERS, Appellant,**

v.

**W.F. FLOYD, M.D., Appellee.**

**No. 10–94–189–CV.**

Court of Appeals of Texas, Waco.

May 10, 1995.

Rehearing Overruled May 24, 1995.

John A. (Jack) Sinz, Andrews & Associates, Nacogdoches, for appellant.

Lisa L. Havens–Cortes, Bob Burleson, Bowmer, Courtney, Burleson, Normand and Moore, An Office of Naman, Howell, Smith & Lee, P.C., Temple, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE JJ.

## OPINION

THOMAS, Chief Justice.

This is an appeal from a summary judgment. In 1974, after the decision in *Roe v. Wade*[1], Dr. W.F. Floyd performed a surgical abortion[2] on Tammy Hartman, a sixteen-year-old minor. He performed the abortion with the written informed consent of her mother, Ruth Hartman, but did not disclose to Tammy that she was pregnant and about to have an abortion. Tammy learned of the abortion in 1990 and filed suit against Dr. Floyd in 1992, generally alleging negligence for failing to make full disclosure and for performing the abortion without her informed consent.[3]

■ Dr. Floyd moved for summary judgment on two grounds: absence of a legal duty to Tammy and the two-year statute of limitations. The court granted him a take-nothing summary judgment, and Tammy appeals. Because the court did not specify the ground on which it granted summary judgment, we must affirm it if either of the theories advanced are meritorious. *See Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

We will affirm the summary judgment because we find as a matter of law that in 1974 Dr. Floyd owed no legal duty to obtain Tammy's informed consent to the abortion. Because he owed her no legal duty, we do not reach Tammy's other points regarding the statute of limitations, the discovery rule, and fraudulent concealment.

## STANDARD OF REVIEW

■ In determining whether a genuine issue of material fact exists, we must take evidence favorable to the nonmovant as true, indulge every reasonable inference for the nonmovant, and resolve any doubts in favor of the nonmovant. *See Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985). However, whether Dr. Floyd had a legal duty to obtain Tammy's informed consent is a question of law for the court to determine from the facts surrounding the occurrence. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

## BACKGROUND

On October 2, 1974, Ruth Hartman took Tammy, her sixteen-year-old unemancipated daughter, to Dr. Floyd for an examination after Tammy admitted to her that she was sexually active. Her mother, who is not a party to this suit, represented to Dr. Floyd that Tammy was mentally retarded, was under the care of a psychiatrist at the Belton Mental Health and Mental Retardation Clinic

---

1. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

2. We note that an examination of the tissue was conducted four days following Tammy's release from the hospital. The pathology report indicates that there were degenerative changes, evidence of hemorrhage, inflammation and necrosis, and that there were "no fetal parts noted." This suggests that Tammy was not pregnant at the time of the procedure and, therefore, no abortion was performed. However, this argument was not presented in the motion for summary judgment and cannot be considered. *See McConnell v. Southside School Dist.*, 858 S.W.2d 337, 339 (Tex.1993). Notwithstanding the pathology report, we will refer to the procedure as an "abortion."

3. Tammy sued in her married name, Tammy Hartman Powers.

(MHMR Clinic), and had been raped. Furthermore, Hartman told Dr. Floyd that, if Tammy were pregnant, she would be incapable of raising the child and that the family would not keep the baby under any circumstances. Dr. Floyd accepted these representations as true. Actually, Tammy had not been raped, but had been engaging in sexual relations with her boyfriend, and her IQ had been evaluated at slightly above "retarded" by the MHMR Clinic.

Dr. Floyd performed a pregnancy test and telephoned Ruth Hartman at home to inform her that Tammy was in her first trimester of pregnancy. Dr. Floyd obtained written informed consent from Tammy's mother prior to performing a "D and C" (dilatation and curettement) to terminate Tammy's pregnancy. He performed the abortion on October 4, 1974, and Tammy was released from the hospital the same day.

Tammy learned of the pregnancy and abortion in 1990 when she ordered her medical records and saw a reference to "surgical abortion." She contacted Dr. Floyd to question him about the records, and he confirmed that she had, in fact, undergone a surgical abortion.

Tammy instituted this action against Dr. Floyd within two years of reviewing her records, alleging that he was negligent in the following respects: (1) in performing a surgical abortion without obtaining her informed consent; (2) in failing to completely inform her that she was pregnant and that the D and C procedure would result in termination of her pregnancy; (3) in failing to completely disclose to her all possible ramifications of her decision; and (4) in fraudulently concealing that a surgical abortion was performed.

Dr. Floyd testified that he informed Tammy she was pregnant. However, we must take as true Tammy's claim that the only communication she had with Dr. Floyd was his explanation to her that she would undergo a D and C and her consenting to that procedure. *See Nixon,* 690 S.W.2d at 549 (holding that evidence favorable to the nonmovant must be taken as true in a summary judgment proceeding). We must also take as true her testimony that she did not know she was pregnant, that she did not know what a

D and C was, and also that she never would have consented to the D and C had she known it would terminate her pregnancy. *See id.*

## DID DR. FLOYD HAVE A LEGAL DUTY IN 1974 TO CONSULT WITH, AND OBTAIN INFORMED CONSENT FROM, A MINOR BEFORE PERFORMING AN ABORTION?

■ In Texas, a physician must make reasonable disclosure of the risks of medical treatment and must secure the authority or consent of the patient to legally perform a medical procedure. See *Wilson v. Scott,* 412 S.W.2d 299, 301 (Tex.1967); *Johnson v. Whitehurst,* 652 S.W.2d 441, 444 (Tex.App.–Houston [1st Dist.] 1983, writ ref'd n.r.e.). Tammy does not argue that Dr. Floyd failed to obtain informed consent from her mother for the abortion. In fact, summary judgment evidence conclusively establishes otherwise. Tammy does contend, however, that her mother did not have authority to consent, and that Dr. Floyd should have consulted with and obtained her (Tammy's) informed consent.

■ In support of Tammy's allegation that Dr. Floyd owed a legal duty to consult with her and obtain her informed consent, she presented the affidavit of Dennis R. Flores, M.D. She also relies on *Roe v. Wade* and its progeny to establish the legal duty. *See Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). We will examine her contentions as well as other potential sources of such duty, as the issue is a question of law. *See Greater Houston Transp. Co.,* 801 S.W.2d at 525.

### DR. FLORES' AFFIDAVIT

Dr. Flores asserted in his affidavit:

In 1974, a physician, when presented with a pregnant patient, had a duty to consult with the pregnant patient. An abortion could be performed only after the physician had fully discussed the matter with the pregnant patient. The physician had a duty also to explain fully all of the consequences and risks involved with abortions. The patient also must have been given enough information and a sufficient

explanation about the procedure in order for the pregnant patient to make an informed decision as to whether or not to proceed with the procedure after full and complete explanation of the procedure, its risks and consequences.

However, the affidavit wholly fails to recognize any possible difference between the legal duty owed to an adult and a minor. In any event, Tammy cannot create a legal duty merely by furnishing an affidavit that such a duty exists. As already noted, whether a legal duty exists is a question of law. *See id.*

### ROE V. WADE AND ITS PROGENY

In 1973, prior to Tammy's abortion, the United States Supreme Court decided *Roe v. Wade,* in which it stated:

> [T]he attending physician, *in consultation with his patient,* is free to determine, without regulation by the State, that, in his medical judgment, the patient's pregnancy should be terminated....

*Roe v. Wade,* 410 U.S. at 163, 93 S.Ct. at 732 (emphasis added).

Tammy apparently relies on the phrase "in consultation with his patient" as the basis for her argument that Dr. Floyd owed a legal duty to consult with her and obtain her informed consent. *See id.* Implicit in her argument is that *Roe v. Wade* imposes such a duty and that the duty extends to a minor patient.

Tammy misreads and misapplies *Roe v. Wade.* The quoted language, taken in context, acknowledges the right of the physician and the patient to make a decision free from state interference. *Roe v. Wade* restricted Texas' ability to regulate abortion; it did not, in any way, speak to or create a legal duty of a physician to obtain the consent of his patient. Furthermore, *Roe v. Wade* acknowledged that the right of privacy guaranteed in the Ninth or Fourteenth Amendment is broad enough to encompass a *woman's* deci-

sion whether or not to terminate her pregnancy. *Id.,* 410 U.S. at 153, 93 S.Ct. at 727. The plain meaning of "woman" is an adult female person, as distinguished from a child or male. *See Webster's New International Dictionary of the English Language* 2944 (2d ed. 1948); *Merriam Webster's Collegiate Dictionary* 1360 (10th ed. 1993). For these reasons, Tammy cannot rely upon *Roe v. Wade* as establishing a duty for her negligence cause of action.

The United States Supreme Court eventually recognized that a minor also has constitutional rights with respect to abortion decisions. *See Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979); *Planned Parenthood of Cent. Mo. v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). However, these decisions post-date the abortion in this case and, like *Roe v. Wade,* do not attempt to impose a legal duty upon a physician. Therefore, they do not speak to Dr. Floyd's legal duty in 1974.

We do not interpret Tammy's argument as asserting a tortious violation of a constitutional right founded in *Roe v. Wade* and its progeny. Such an argument would necessarily fail, in any event, because the constitution does not provide or create a right against a private actor absent state action. *See Jackson v. Metropolitan Edison Company,* 419 U.S. 345, 349, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).

### TEXAS STATUTES

#### Minor's Consent

In 1974, Texas statutory law did not impose a duty upon a physician to obtain the informed consent of a minor prior to performing an abortion. In fact, the Family Code specifically provided in 1974 that a minor could not consent to an abortion.[4] Act of May 25, 1973, 63rd Leg., R.S., ch. 543, § 1, 1973 Tex.Gen.Laws 1411, 1456–57 (current

---

4. Tammy contends that in 1974 there was no Texas law specifically addressing a minor's right to choose abortion. However, section 35.03(a)(4) spoke directly to a minor's ability to make a choice regarding abortion: "A minor may consent to the furnishing of hospital, medical, surgical, and dental care by a licensed physician or dentist if the minor ... is unmarried and pregnant, and consents to hospital, medical or surgical treatment, *other than abortion,* related to her pregnancy...." Act of May 25, 1973, 63rd Leg., R.S., ch. 543, § 1, 1973 Tex.Gen.Laws 1411, 1456–57 (current version at TEX.FAM.CODE ANN. § 35.03(a)(4) (Vernon Supp.1995)) (emphasis added).

version at TEX.FAM.CODE ANN. § 35.03(a)(4) (Vernon Supp.1995)).

### Parental Consent

In 1974, section 12.04 of the Texas Family Code provided that "the parent of a child has ... the power to consent to ... medical, psychiatric, and surgical treatment...." Act of May 25, 1973, 63rd Leg., R.S., ch. 543, § 1, 1973 Tex.Gen.Laws 1420–21 (current version at TEX.FAM.CODE ANN. § 12.04(6) (Vernon Supp.1995)).

Tammy argues that her mother could not give effective consent because the abortion was not "treatment." She relies on *Little v. Little,* 576 S.W.2d 493, 495 (Tex.Civ.App.–San Antonio 1979, no writ), in which the San Antonio court of appeals held that the definition of "treatment" is limited to "the steps taken to effect a cure of an injury or disease ... including examination and diagnosis as well as application of remedies."

The Family Code does not define medical or surgical "treatment." There is a broader definition, however, than the one used by the San Antonio court: "treatment," or "to treat," means "to care for or deal with medically or surgically." *Merriam Webster's Collegiate Dictionary* 1258 (10th ed. 1993).

We reject the definition of "treatment" used in *Little* because it is too restrictive. For example, should "treatment" be limited, as the *Little* court suggests, a parent could not consent to surgery to remove an unwanted birth mark or even circumcision, as neither procedure would be taken "to effect a cure of an injury or disease." However, under the broader definition of treatment, a parent could consent to those procedures because they "care for or deal with [a patient's condition] medically or surgically."

The procedure to be performed by Dr. Floyd met the broader definition of treatment—it dealt with or cared for Tammy's condition medically or surgically. Therefore, we hold that Tammy's mother had authority under the Family Code to consent to the abortion. *See* TEX.FAM.CODE ANN. § 12.04(6).

Dr. Floyd owed no statutory duty to Tammy to consult with or obtain informed consent from anyone other than her parent, which he indisputably did. Thus, Dr. Floyd's actions conformed to the duty imposed upon him by the Texas Family Code in 1974. *See id.* §§ 35.03(a)(4), 12.04(6).

Tammy did not allege that the Family Code provisions violated her constitutional right to choose or refuse abortion, so we presume the applicable statutes are constitutional. *See Carrollton–Farmers v. Edgewood Independent,* 826 S.W.2d 489, 493 (Tex.1992).

### COMMON LAW

■ In Texas a physician must make reasonable disclosure of the risks of medical treatment and must secure the authority or consent of the patient to legally perform a medical procedure. See *Wilson,* 412 S.W.2d at 301; *Johnson,* 652 S.W.2d at 444. This duty is based on the right of every normal adult to determine what shall be done to his or her own body and a recognition that the patient needs adequate information to make an intelligent decision whether to consent to or refuse the treatment. *Id.*

■ However, "[c]ertain classes of people, such as the insane, the mentally deficient and minors in general have been regarded as incompetent to give legally binding consent." *Family Planning, Contraception and Voluntary Sterilization: An Analysis of Laws and Policies in the United States, Each State and Jurisdiction* 70 (Department of Health, Education & Welfare, Pub. No. (HSA) 74–16001, 1974) [hereinafter *Family Planning, Contraception and Voluntary Sterilization* ]. Minors were considered "charges" of the family and state and were legally unable to act for themselves. *Poe v. Gerstein,* 517 F.2d 787, 789 (5th Cir.1975) (citing *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)). Consent for a minor must be given by someone legally authorized to give the requisite consent. *Moss v. Rishworth,* 222 S.W. 225, 226 (Tex. Comm'n App.1920, judgm't adopted).

Furthermore, the common law did not distinguish between the infant and the mature teenager, treating them both as the "property" of their parents, who could make all decisions affecting them. *Poe,* 517 F.2d at 789; *Family Planning, Contraception and Voluntary Sterilization,* at 70. By 1974, the

federal government and some states had begun to recognize the rights of "mature minors" to make their own decisions about their lives, generally, and about their medical care in particular. *Family Planning, Contraception and Voluntary Sterilization,* at 70. However, the general rule in Texas was that a minor patient could not consent to medical or surgical treatment, and Texas has never adopted or recognized the "mature minor" exception. *Little,* 576 S.W.2d at 495; *O.G. v. Baum,* 790 S.W.2d 839, 842 (Tex.App.–Houston [1st Dist.] 1990, no writ).

At the time of the abortion, Tammy was a minor who could not give effective consent. Given the purpose of requiring a physician to disclose information—*i.e.,* to help the person who will consent, or withhold consent, make an informed decision—a physician should not be required to make full disclosure to a minor, when the minor cannot give legally effective consent. The law will not require a vain or useless act. *Mackey v. Lucey Products Corp.,* 150 Tex. 188, 239 S.W.2d 607, 608 (1951).

Furthermore, complete disclosure could be severely disturbing to a minor. Even in dealing with an adult patient, "[i]t has been suggested that some disclosures may so disturb the patient that they serve as hindrances to needed treatment. Certain disclosures in some instances may even be bad medical practice." *Wilson,* 412 S.W.2d at 301 (citations omitted). Without the objective of obtaining informed consent, we can see no justification for requiring full and complete disclosure to a minor in all circumstances.

## CONCLUSION

The summary judgment evidence conclusively established that Dr. Floyd consulted with and obtained a signed "Consent to Operate" from Tammy's mother. Because the surgical procedure constituted "treatment," Tammy's mother had the legal authority to consent to the abortion on Tammy's behalf. Moreover, in 1974 Dr. Floyd did not have a legal duty to consult with Tammy or obtain her informed consent as a matter of law. Accordingly, the summary judgment conclusively established that Dr. Floyd acted in

conformance with the legal duties imposed upon him. Because Dr. Floyd conclusively negated an essential element of Tammy's cause of action, he was entitled to judgment as a matter of law. *See Gibbs v. General Motors Corporation,* 450 S.W.2d 827, 829 (Tex.1970).

We do not reach points five, six and seven, relating to the discovery rule, statute of limitations, and fraudulent concealment. All other points are overruled.