NO. 07-02-0251-CV


 

IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JUNE 3, 2003



______________________________




IN THE MATTER OF THE MARRIAGE OF JEREMY ALLEN 


ROYAL AND ADRIA RENE ROYAL AND IN THE INTEREST


OF COURTNEY CHEYENNE ROYAL, A MINOR CHILD



 _________________________________



FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;



NO. 2001-515,444; HONORABLE DRUE FARMER, JUDGE



_______________________________



Before REAVIS and CAMPBELL, JJ., and BOYD, S.J. (1) 

OPINION


 In three points of error, appellant Jeremy Allen Royal (Jeremy) challenges the
property division made by the trial court in dissolving his marriage to appellee Adria Rene
Royal (Adria). He does not challenge the portion of the trial court's judgment dissolving the
marriage. In each of his points, Jeremy complains of the trial court's division of the
couple's home, which comprised the bulk of their community estate. Finding no reversible
error in the trial court's property division, we affirm the judgment of the trial court.

 The parties were married in August 1994 and had a child in 1995. In 1996, they
purchased a house in Lubbock. The details of that purchase will be later discussed in
detail below. In October 2001, Jeremy filed suit for divorce, alleging that the marriage had
become insupportable because of discord between the parties. Adria answered the suit
and included a cross petition seeking divorce. Each of the parties asked to be named
managing conservator of their daughter.

 After a bench trial, the trial court dissolved the marriage and appointed Jeremy and
Adria as joint managing conservators of their daughter. The court found that the house
was community property, but Jeremy was entitled to reimbursement for separate property
contributions toward the purchase of the house. It ordered the sale of the house and that
the proceeds be divided as follows: $20,000 to be used to pay the outstanding mortgage
on the house, $12,850 to be paid to Jeremy as reimbursement for his separate property
contributions, and the remainder to be divided between the parties. The thrust of Jeremy's
appellate challenge is directed at that portion of the property division declaring him to only
be entitled to $12,850 reimbursement. 

 The trial evidence was that in 1996, the parties sought financial assistance from
Jeremy's grandparents, Charles and Margaret Kay, to purchase their house. The Kays
agreed to help and, on May 11, 1996, provided Jeremy with a $5,000 check which was
used as an earnest money deposit. The check was signed by Margaret Kay and Charles
Kay testified it was intended as a gift to Jeremy. On May 28, 1996, the day the deal was
closed, the parties executed a promissory note in the amount of $60,000 in favor of
Charles, which was additionally secured by a deed of trust. The note bore interest at the
rate of five percent per annum and provided that only interest would be paid through
January 5, 2000, at which time a new note would be executed. Failure to execute a new
note at that time would make the entire balance due. 

 The "settlement statement" made at the closing of the house purchase shows that
of the $73,503 required to complete the purchase price, $7,850 was paid in cash, $5,000
came from the earnest money deposit, $60,000 advanced by the Kays, and $653 was
credited to cover outstanding taxes on the property. When the deal was closed, $67,850
was paid by Charles by a check made payable to Norwest Bank. (2) 

 On January 2, 2001, Jeremy and Adria executed a renewal note in the amount of
$20,000 to the Kays. The renewal note made reference to the original note in the amount
of $60,000 and its original maturity date of January 5, 2000, and referred to an unpaid
balance of $20,000 principal and interest on the original note. The same day that the
renewal note was executed, the Kays assigned it to Aaron Royal, another of their
grandchildren.

 At trial, Charles averred that the note and its assignment were part of a plan to
reduce his estate for tax purposes through gifts to his grandchildren. He testified that the

$40,000 reduction in the house note was the result of gifts to Jeremy of $10,000 from
himself and $10,000 from his wife to Jeremy in 2000 and, in 2001, each of them made
another such gift. He said the transfer of the $20,000 note to Aaron was a gift to him to
equalize the gifts from the Kays to their grandchildren. (3) Jeremy also introduced a
December 29, 2000 letter to Charles from his attorney stating that making the gifts in this
way would allow them to be made tax free. Charles averred that was his intent in making
the transactions. 

 The trial court filed findings of fact and conclusions of law. As relevant here, the
judge found: (number 11) there was no evidence that on January 2, 2001, Charles had
"any intention other than forgiveness of $40,000 [debt] to both [Jeremy and Adria]," and
(number 17) there was no evidence that the $40,000 debt forgiveness was "part of what
[Jeremy] claims as his 'separate' estate." The court made the following conclusions of law:
(number 1) the house was community property, (number 2) the house was acquired by
assuming community debt, and (number 3) the $40,000 debt forgiveness by the Kays was
a gift to both Jeremy and Adria as community property and never became part of Jeremy's
separate estate (citing Section 3.403 of the Texas Family Code (Vernon Supp. 2003)).

 Section 7.01 of the Family Code requires a court to order a division of the parties'
community estate in a divorce proceeding "in a manner that the court deems just and right." 
Whether that was accomplished is the controlling question to be decided by us in reviewing
a property division in a divorce case. Rafferty v. Finstad, 903 S.W.2d 374, 376 (Tex.
App.-Houston [1st Dist.] 1995, writ denied). In conducting our review, we must remember
that the trial court is afforded wide discretion in dividing the marital estate and its decision
will not be disturbed unless a clear abuse of that discretion is shown. Jacobs v. Jacobs,
687 S.W.2d 731, 733 (Tex. 1985); Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981).

 In this appeal, neither party argues the division of other community property affects,
or is so intertwined with the division of the house proceeds so as to require consideration
of other aspects of the property division. Our review, then, will be limited to the question
actually presented, namely, whether the trial court erred in its division of the house
proceeds.

 In his first point, Jeremy challenges the sufficiency of the evidence to support the
trial court finding that the Kays' debt forgiveness was a gift to the community, or a gift to
Jeremy and Adria equally, rather than a gift to him as his separate property. His second
and third points are non-substantive variations on the first point challenging the failure to
characterize the gift as his separate property and the failure to grant his claim for economic
contribution to the community estate. Because of their similarity, we will consider all the
points together.

 A factual sufficiency challenge to the trial court's findings of fact is reviewed under
the same legal standards as factual sufficiency challenges to jury verdicts. Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex. 1996). In our review, we weigh all of the evidence and the
findings may only be overturned if they are so against the great weight and preponderance
of the evidence as to be clearly wrong and unjust. Id. We review the trial court's
conclusions of law de novo as legal questions. Piazza v. City of Granger, 909 S.W.2d 529,
532 (Tex. App.-Austin 1995, no writ). A conclusion of law will not be reversed unless it is
erroneous as a matter of law. Id.

 It is well established that property acquired by gift is the separate property of the
donee. Tex. Fam. Code Ann. § 3.001(2) (Vernon 1998). When separate property is used
to enhance the value of the community estate, including the reduction of community debt,
the spouse whose separate property was used has an equitable right of reimbursement. 
Tex. Fam. Code Ann. § 3.403 (Vernon Supp. 2003); Penick v. Penick, 783 S.W.2d 194,
196 (Tex. 1988). A right of reimbursement is not a property right, but is an equitable claim
within the discretion of the trial court in making a just and right division of the community
estate. Beard v. Beard, 49 S.W.3d 40, 56 (Tex.App.-Waco 2001, pet. denied). The
parties agree that the house was purchased with the $12,850 cash payment and the
execution of the $60,000 purchase money note. They also agree that the Kays made gifts
of $40,000 by crediting the $60,000 note with that much. They disagree as to whom the
$40,000 gifts were made.

 In support of his position that the entire $40,000 was a series of gifts to him, Jeremy
cites the trial evidence that the Kays knew there were problems in the marriage that existed
before the gifts were made, as well as Charles's unequivocal testimony that he intended
the gifts to be made to Jeremy individually. He also notes the absence of any testimony
that Charles had any other intent as well as the inference that the transaction was a gift
because Jeremy was the Kay's grandson and what he describes as the "natural bounty of
their affection." Jeremy also argues that Adria's testimony that she "assumed" half of the
gifts were to her is no actual evidence of the Kays' intent.

 Adria argues that Jeremy failed to prove by clear and convincing evidence that the
gifts from the Kays were his separate property. She also argues that the evidence on the
question was conflicting and the trial court's resolution that the gifts were to both parties
equally was within the bounds of its discretion as the trier of fact. She also cites her
testimony that Charles never informed them that the $40,000 debt reduction was intended
as a gift to Jeremy alone. She additionally notes that there is an absence of any written
evidence of Charles's intent or of any gift to Jeremy in 2000.

 In our discussion of Jeremy's points, we initially note that we do not agree with Adria
that Section 3.03 of the Family Code places the burden on Jeremy to establish by clear
and convincing evidence that the gifts from the Kays were his separate property. Section
3.03 establishes that there is a presumption that property possessed by spouses at the
time of a dissolution of marriage is community property and, to overcome that presumption,
a party must establish its separate property nature by clear and convincing evidence. Tex.
Fam. Code Ann. § 3.003 (Vernon 1998). The gifts with which we are concerned do not fall
within the classification of "property possessed . . . during or on dissolution of marriage." 
The property in question is the parties' house, which both agree is community property. 
To the degree each party claimed an equitable right of reimbursement because of
contributions reducing the debt on the house, they bore the burden of establishing their
respective claims. Tex. Fam. Code Ann. § 3.403 (Vernon Supp. 2003).

 Jeremy specifically challenges the trial court findings of fact numbers 11, 16 and 17. 
In its finding of fact 11, the trial court found that on January 2, 2001, "there is nothing in the
record to indicate [Mr. Kay had] any intention other than the forgiveness of $40,000 to both
[Jeremy] and [Adria]." We agree with Jeremy that Charles's testimony is some evidence
that he did not intend the debt forgiveness to be a gift to both parties equally. However,
that was not the only evidence on the issue and in its capacity as finder of fact, the trial
judge was not required to accept Charles's testimony as dispositive of the case. See
McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986).

 Finding 16 was that there was no evidence that Jeremy "contributed anything" or
had advance notice of Charles's intent to forgive $40,000 of the couple's debt. We do not
perceive how this finding is reversibly material to the trial court's division of the property. 
Tex. R. App. P. 44.1(a).

 In its finding 17, the trial court found that "there is no evidence that any part of the
$40,000 forgiven [sic] of the note was ever part of [Jeremy's] 'separate' estate." (4) This
finding is in error. First, Charles's testimony that he had given gifts to Jeremy was not so
weak as to be a mere surmise or suspicion of a fact; thus, it constituted some evidence of
a separate property gift. Second, the finding is contrary to Texas law. As Jeremy points
out, Texas courts consistently hold that gifts to spouses jointly are not community property,
rather, each spouse takes half of the gift as their separate property. See, e.g., Dutton v.
Dutton, 18 S.W.3d 849, 852 (Tex. App.-Eastland 2000, pet. denied); McLemore v.
McLemore, 641 S.W.2d 395, 397 (Tex. App.-Tyler 1982, no writ). See also 26 U.S.C. §
2503(b)(1) (excluding from gift taxes the first $10,000 of gifts made to any person during
a calender year) (emphasis added). That state of the law also requires us to sustain
Jeremy's challenge to the trial court's conclusion of law 3, which mirrored finding of fact 17.

 We next consider the $12,850 awarded to Jeremy as "reimbursement" for his
separate property contribution. It is well established that when separate property is used
to acquire property during marriage and title is taken in the names of both spouses, the
spouse who contributed the separate property is presumed to have made a gift of half of
the separate funds to the other spouse unless rebutted by evidence clearly establishing
that there was no intention to make a gift. Cockerham v. Cockerham, 537 S.W.2d 162,
168 (Tex. 1975); In re Marriage of Thurmond, 888 S.W.2d 269, 273 (Tex.App.-Amarillo
1994, writ denied). The presumption of gift arises because it is not possible for a spouse
to make a gift to the community estate. Id. at 273, n.1. There is no evidence in this record
that Jeremy did not intend to make a gift.

 As we noted in Thurmond, the use of separate property in the acquisition of
community property, as opposed to merely enhancing the value of the community property,
gives the contributing spouse equitable title to the extent the contribution was not a gift to
the other spouse. Id. at 273. Thus, Jeremy's $12,850 was not an economic contribution
under Section 3.401 of the Family Code. Id. However, Adria did not argue to the trial court
nor does she contend here that the trial court erred in its characterization of this amount,
neither does she contend that the $12,850 award divested her of separate property. That
being true, any error in making this award has been waived. Tex. R. App. P. 33.1.

 Our holding that the challenged findings of fact are not supported by the record does
not end our task. This is true because if the trial court's holding is correct on any theory
applicable to the case, it must be affirmed. In re Marriage of Braddock, 64 S.W.3d 581,
585 (Tex. App.-Texarkana 2001, no pet.).

 Reiterated, Jeremy argues the evidence establishes the $40,000 debt forgiveness
resulted from a series of gifts from the Kays, while Adria contends the evidence shows the
gifts were made to her and Jeremy equally, making the trial court's equal division of the
proceeds from the sale of the house appropriate.

 Adria correctly notes that a party seeking to prove a gift must establish three
elements: 1) intent to make a gift; 2) delivery of the property; and 3) acceptance of the
property. In re Estate of Hamill, 866 S.W.2d 339, 344 (Tex. App.-Amarillo 1983, no writ). 
See also Akin v. Akin, 649 S.W.2d 700, 703 (Tex. App.-Fort Worth 1983, writ ref'd n.r.e.)
(gift must be "fully executed by delivery" to be effective). Charles Kay's testimony of his
intent in and of itself is not sufficient to establish the gifts. Here, there is no evidence of
the delivery of any gift to Jeremy in 2000. The only evidence of delivery and acceptance
is the renewal note executed by the parties in January 2001. 

 Jeremy has not shown any exception to the delivery requirement that would justify
the trial court to give effect to Charles's stated intent by recognizing the January 2001 gifts
as having been made in 2000. While federal tax law does not govern the character of
these gifts, it is worth noting that 26 U.S.C. § 2503 excludes the first $10,000 of gifts made
by a person "during the calender year." It contains no mechanism to deem a gift made in
one year as having been made in a prior year. Compare, 26 U.S.C. § 219(f)(3) (allowing
contributions to individual retirement accounts made before April 15 to be designated as
having been made during the prior year). The record before us does not permit any other
conclusion than the $40,000 gifts were made in 2001.

 The evidence concerning the Kays' intent was conflicting. Adria's testimony
controverted that of Charles that he told both parties that he and his wife were making gifts
to Jeremy alone. Moreover, in addition to Charles's testimony of his intent to make gifts,
the record contains uncontroverted evidence of his intent to avoid gift taxes. Although the
record does not expressly show whether the Kays paid gift taxes on their gifts, from
Charles's testimony that he treated the gifts as consisting of $20,000 given in 2000 and
$20,000 given in 2001, it is a reasonable surmise that he viewed the gifts as falling within
the $10,000 per year exemptions.

 Given Charles's intent to avoid gift taxes, and the evidence establishing that the
whole $40,000 was given in 2001, the trial court could have reasonably concluded that the
Kays' gifts were to both Jeremy and Adria. Moreover, equity does not support Jeremy's
argument that the trial court was obligated to resolve the conflicting evidence in favor of
finding all of the Kays' gifts were to him alone. To do so would be to permit Jeremy and
the Kays to utilize Adria's gift tax exemption at the time of the gifts, but to preclude her from
benefitting from those gifts upon the dissolution of the marriage.

 Our holding that the gifts consisted of $20,000 to each spouse as their separate
property does not require a reformation of the court's decree to expressly provide that each
of the parties had a $20,000 right of reimbursement in the proceeds from the house. The
decretal provision that those proceeds be equally divided sufficiently protects each party's
reimbursement claims.

 Finally, we address Jeremy's claim that he was divested of his separate property
because the trial court required the expenses of the house sale be deducted before the
remainder be paid to the parties. That is so, he argues, because the economic
contribution, § 3.403 of the Family Code, granted him an "equitable lien" securing his
interest in the property. We disagree. Jeremy failed to cite any authority for the
proposition that a separate property interest must be recovered before any sale costs. 
Additionally, an equitable lien authorized by Family Code § 3.403 is just that, a lien. It is
not a property interest, separate or otherwise, and the legislature specifically provided no
property interest was created by the subchapter authorizing equitable liens for economic
contribution. See § 3.404(b). Without a separate property interest arising from Jeremy's
claim for economic contribution, there can be no prohibited divestiture.

 

 In summary, for the foregoing reasons, each of Jeremy's points are overruled and
the judgment of the trial court is affirmed.

 John T. Boyd

 Senior Justice 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 
2. The Bank's only involvement was as the issuer of a cashier's check in the amount
of the Kays' check to it.
3. Charles testified that they had previously given another $20,000 to Aaron.
4. This finding is mirrored in conclusion of law 5.



pellants' immunity. The ultimate relief sought by Miller is the recovery of money
damages. His claims for declaratory relief and mandamus are merely ancillary to that
claim and appellants' second issue must be viewed and discussed in that context.

 Section 552.321 of the Government Code supports the view that mandamus relief
may be barred by sovereign immunity. That statute waives immunity from suits seeking
writs of mandamus to compel disclosure of information covered by the Open Records Act. 
Tex. Gov't Code Ann. § 552.321 (Vernon 1994). That statute would not be necessary if,
as Miller contends, the doctrine of sovereign immunity is not applicable to suits seeking
mandamus relief. But see 52 Tex.Jur.3d § 485 (West 1999) (citing cases in which it was
held that mandamus was not barred by sovereign immunity). 

 Article V, section 8 of the Texas Constitution grants district courts "appellate
jurisdiction and general supervisory control over the County Commissioners Court, with
such exceptions and under such regulations as may be prescribed by law." Section
24.020 of the Government Code merely repeats the constitutional provision. Our supreme
court considered the nature of the supervisory control in Haverbekken v. Hale, 109 Tex.
106, 204 S.W. 1162 (1918), and in doing so, said:

 The power of the District Court to supervise the proceedings of the
Commissioners Court here involved gave the injunction suit the character of
a direct attack upon those proceedings rather than a collateral one. 
Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325. This permitted a full
inquiry for the purpose of seeing whether throughout the proceedings the
Court had complied with the law, unhindered by any presumptions ordinarily
indulged in a collateral attack upon a judgment of a court of general
jurisdiction. Not otherwise could the District Court supervise and control its
action.


Id. at 1165 (emphasis added). See also Stringer, 843 S.W.2d at 479 (once the
commissioner's court acts, the district court may review the commissioners' orders); Grant
v. Ammerman, 437 S.W.2d 547, 550 (Tex. 1969) (order abolishing Justice Court was
reviewable by district court under general supervisory power); Bird v. Alexander, 288 S.W.
606, 608 (Tex.Civ.App.--Dallas 1926, no writ) (final action required before review by district
court); Rodriquez v. Vera, 249 S.W.2d 689, 692 (Tex.Civ.App.--San Antonio 1952, no writ)
(acts of commissioners' courts reviewable on the same basis as those of other courts). 
Similarly, cases applying section 24.020 of the Government Code and its predecessors
have all involved direct challenges to acts or omissions of commissioners' courts. We
have found no case supporting the view that the constitutional and statutory power of
review by the district court in any way waives the right of sovereign immunity against suits
for damages.

 Here, Miller's claim seeking declaratory judgment in the district court may be
construed as seeking an appellate review of the commissioners' action in setting
constables' salary at $227 per year and subsequently eliminating the salary and health
benefits. Under the authorities we have discussed, that type of action is not barred by
sovereign immunity. However, none of the authorities on which he relies support a waiver
of sovereign immunity as to his claims for actual and exemplary damages. Thus, the trial
court erred in denying the plea to the jurisdiction as to Miller's claim for damages against
Potter County, Judge Ware and the commissioners in their official capacity. As to Miller's
claim for mandamus relief, while not barred by sovereign immunity directly, it was
derivative of his claim for damages. Requiring the commissioner's court to set a salary
that Miller is barred from collecting in his claim for damages would be to compel a useless
act. As a matter of public policy, courts do not require performance of useless acts. 
Mackey v. Lucey Products Corp., 150 Tex. 188, 239 S.W.2d 607, 608 (1951); Rogers v.
Ricane Enterprises, Inc., 930 S.W.2d 157, 167 (Tex.App.--Amarillo 1996, writ denied);
Powers v. Floyd, 904 S.W.2d 713, 718 (Tex.App.--Waco 1995, writ denied). Appellants'
second issue is sustained.

 In their third issue, appellants challenge the trial court's denial of their plea to the
jurisdiction in which they asserted legislative immunity to the claims asserted against them
in their individual capacities. Legislative immunity protects individuals from liability when
acting in a legislative capacity. Thus, its applicability turns on the nature of the conduct
at issue. See Clear Lake City Water Auth. v. Salazar, 781 S.W.2d 347, 349 (Tex.App.--Houston [14th Dist.] 1989, no writ) (applying immunity to local water board). An action is
legislative in nature when it reflects a discretionary, policymaking decision of general
application rather than an individualized decision based on particular facts. In re Perry,
60 S.W.3d 857, 860 (Tex. 2001). The doctrine applies to county commissioners acting in
their legislative capacities. Merril v. Carpenter, 867 S.W.2d 65, 66 (Tex.App.--Fort Worth
1993, writ denied).

 Responding to appellants' argument, Miller asserts that the setting of the
constable's salary cannot be a legislative act protecting commissioners from liability
because the duty to set the salary is mandatory and ministerial. Vondy, 620 S.W.2d at
108. As we noted in our footnote 2 above, it might appear that the supreme court's
holdings concerning whether discretion and ministerial duties are mutually exclusive are
not consistent. Compare Vondy, supra, with Downing v. Brown, 935 S.W.2d 112 (Tex.
1996). However, any such apparent inconsistency was resolved by the holding in Jensen
Constr. Co. v. Dallas County, 920 S.W.2d 761, 773 (Tex.App.--Dallas 1996, writ denied). 
Appellants' third issue is sustained.

 The holdings which we have made above require us to make the following
dispositions of this appeal: 

 1. The partial summary judgment of the trial court is reversed insofar as it
denies the pleas to the jurisdiction of appellants Potter County, Arthur Ware,
individually and as the County Judge of Potter County, and the named
defendant commissioners of the Potter County Commissioner's Court in their
individual and official capacities on Miller's claim for damages. The writ of
mandamus requiring the Potter County Commissioner's Court to set a
reasonable salary for Miller in his capacity as Constable is also reversed. 
Those claims are severed and we render judgment in favor of appellants on
them. (3) 


 2. That portion of the proceeding seeking declaratory relief pertaining to the
setting of a reasonable salary for the constable's office, including Miller's
quest for attorney's fees, is remanded to the trial court for further
proceedings in accordance with this opinion.




 John T. Boyd

 Chief Justice


Publish.
1. The predecessor to current Rule 7.2(a), former Rule 9(c), only addressed suits
brought against officers in their official capacity.
2. We recognize the apparent conflict in the holdings of these cases that the
commissioner's court had a "ministerial" duty to exercise their discretion and the holding
in Downing v. Brown, 935 S.W.2d 112 (Tex. 1996), that "ministerial acts are those [w]here
the law prescribes and defines the duty to be performed with such precision and certainty
as to leave nothing to the exercise of discretion or judgment." Id. at 114 (quoting City of
Lancaster v. Chambers, 883 S.W.2d 650, 654 (Tex. 1994)). Resolution of this apparent
conflict is not necessary to the disposition of this case.
3. Where the trial court lacks jurisdiction, we may render judgment for appellants in
an interlocutory appeal. Department of Transp. v. Garza, 70 S.W.3d 802, 803 (Tex. 2002).